651 A.2d 553

**Derrick BERGER, Appellant**

v.

**Toni RINALDI.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1994.

Filed Dec. 14, 1994.

John W. Pollins, III, Greensburg, for appellant.

Dennis J. Slyman, Greensburg, for appellee.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

CIRILLO, Judge:

This is an appeal from a judgment entered in the Court of Common Pleas of Westmoreland County in favor of defendant/appellee Toni Rinaldi (Rinaldi) and against plaintiff/appellant Derrick Berger (Berger).[1]  We reverse the judgment

1. Although the notice of appeal and caption provide that this is an appeal from the verdict rendered on March 30, 1994, judgment was not entered on the verdict until April 27, 1994.  We will treat this appeal, therefore, as being from the judgment entered on April 27, 1994.

and remand the case for a new trial consistent with this opinion.

This appeal stems from an automobile accident, which occurred on March 2, 1992. After pleadings were filed, the parties stipulated to the following facts:

1. On March 2, 1992, the Plaintiff (Berger) was the operator of a 1987 Buick, Pennsylvania registration XXN–596.

2. Said 1987 Buick was owned by and titled to Plaintiff's mother, Carolyn Berger.

3. Also on March 2, 1992, the Defendant (Rinaldi) was the operator of a 1991 Plymouth, Pennsylvania registration D41131.

4. On the date aforesaid, the Defendant drove her motor vehicle into the rear portion of a vehicle driven by one Lisa Shugars, causing that vehicle to collide with the rear of Plaintiff's vehicle which was stopped for a traffic signal on East Pittsburgh Street in Greensburg, Pennsylvania.

5. As a result of the accident, Plaintiff suffered physical injuries which are not considered "serious" injuries as that term is used in Act 6 of 1990, Section 8, 75 Pa.C.S.A. Section 1705(d).

6. At the time of the accident, Plaintiff and his mother were residents of the same household.

7. At the time of the accident, said 1987 Buick was covered by a Nationwide "Century II" policy of insurance issued to said Carolyn Berger (Plaintiff's mother), which carried a "full tort" option.

8. Under the terms of the policy, Plaintiff was an "insured."

9. At the time of the accident, Plaintiff was the registered owner of a 1981 Buick which was uninsured.

10. As a result of his failure to maintain financial responsibility for his 1981 Buick motor vehicle, the Plaintiff was denied basic first party benefits under [75] Pa.C.S.A. Section 1714.

■ Based on the pleadings and joint stipulation, the Honorable Gary P. Caruso rendered a verdict in favor of Rinaldi. Judge Caruso found that Berger failed to carry insurance on his then "currently registered" 1981 Buick and, therefore, was deemed to have chosen the limited tort option. Consequently, Berger was barred from recovering non-economic damages. After the verdict was entered, the case was transferred to the Honorable Charles H. Loughran. Post-trial motions were filed and denied.[2] Thereafter, judgment was entered in favor of Rinaldi and against Berger. This timely appeal followed. On appeal, Berger presents one issue for our consideration:

Does the Motor Vehicle Financial Responsibility Law (MVFRL)[3] preclude the owner of an uninsured motor vehicle not involved in the accident from recovering non-economic loss from negligent third parties?

This issue is one of first impression in this Commonwealth. Initially we note our standard of review in this case. The role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law; findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. *Stahli v. Wittman,* 412 Pa.Super. 281, 603 A.2d 583 (1992); *Reuter v. Citizens & Northern Bank,* 410 Pa.Super. 199, 599 A.2d 673 (1991); *Porter v. Kalas,* 409 Pa.Super. 159, 597 A.2d 709 (1991). When this court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. *Short v. Metro-*

2. We note that Rinaldi has filed with this court a motion to dismiss Berger's appeal for failure to file post-trial motions. Although not titled "Post-trial Motions," Berger filed a motion for a new hearing within ten days after the entry of the verdict. The motion was entertained and disposed of by Judge Loughran. Via a separate order, therefore, this court denied Rinaldi's motion to dismiss the appeal.

3. 75 Pa.C.S.A. §§ 1701–1799.7 (1990).

*politan Life Ins. Co.*, 339 Pa.Super. 124, 488 A.2d 341 (1985). Because this case was submitted on a joint stipulation, the role of this court is confined to determining whether the trial judge committed some error of law.

In response to the failures of Pennsylvania's No–Fault Act, P.L. 489, No. 176 (1974), the Pennsylvania legislature replaced the No–Fault Act with the MVFRL in 1984. Among other things, the MVFRL reduced unlimited medical coverage to a mandatory $10,000.00 minimum, reduced the amount of income loss benefits from $15,000.00 to $5,000.00, required all policies to include uninsured/underinsured motorist coverage in specified amounts, and eliminated stacking of first party benefits. *See* 75 Pa.C.S.A. §§ 1711, 1717, 1734. By 1988, however, Pennsylvania automobile insurance rates were the fifth highest in the country.[4]

In an attempt to reduce these spiraling insurance rates, the legislature passed a package of amendments to the MVFRL known as Act 6 of 1990. Act 6 made numerous changes to motor vehicle insurance law in Pennsylvania. These changes were made to redress what most observers believed were the root causes of the automobile insurance crisis—escalating health care costs and the increasing number of automobile tort lawsuits.[5]

The MVFRL provides that "every motor vehicle of the type required to be registered ... which is operated or currently registered shall be covered by financial responsibility." 75 Pa.C.S.A. § 1786(a). "Financial responsibility" is defined as:

The ability to respond to damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 be-

4. Michael deCourcy Hinds, *Uninsured Drivers Create Other Kinds of Wreckage*, N.Y. Times, Sept. 3, 1990, at 10.

5. Representative Freind, a sponsor of Act 6, stated during the final House debate:

The beauty of this bill ... is that it attacks on a permanent basis the two root causes for rising rates—health care costs, and more importantly, the pain and suffering claims and lawsuits.

*House Legislative Journal* pages 202, 223, February 7, 1990.

cause of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident. . . .

75 Pa.C.S.A. § 1702. *See* 75 Pa.C.S.A. §§ 1781–1787 (proof of financial responsibility).

Some of the original provisions of the MVFRL, and many of the 1990 amendments to the MVFRL, speak directly to the legislative intent to deter owners of registered vehicles from failing to carry the requisite financial responsibility. *See Henrich v. Harleysville Ins. Co.*, 533 Pa. 181, 184–85, 620 A.2d 1122, 1124 (1993). For example, the MVFRL requires a vehicle owner to provide proof of financial responsibility when the owner's license is suspended, when the owner is convicted of a traffic offense, or when the vehicle is involved in an accident. 75 Pa.C.S.A. §§ 1783–85 (1990). In addition, section 1714 of the 1984 MVFRL provides that:

An owner of a currently registered motor vehicle who does not have financial responsibility ... cannot recover first party benefits.[6]

75 Pa.C.S.A. § 1714.

The 1990 amendments to the MVFRL require proof of financial responsibility for registration and annual inspections. *Id.* at § 1305(d). Additionally, any owner who operates a motor vehicle or permits such operation upon a highway of this Commonwealth without the requisite financial responsibility commits a summary offense and shall be sentenced to pay a fine of $300.00. *Id.* at § 1786(f). Upon failing to carry the necessary financial responsibility, the Department of Transportation shall also suspend the owner's vehicle registration and operating privilege. *Id.*

Pertinent to this case, Act 6 of 1990 added section 1705 to the Vehicle Code. 75 Pa.C.S.A. § 1705. Section 1705 provides for the election and application of the limited tort and

6. "First party benefits" are defined as "medical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S.A. § 1702.

full tort options.[7]   *Id.*   To place the tort options into the context in this case, we find it necessary to set forth the text of both alternatives:

A.   "Limited Tort" Option—The laws of the Commonwealth give you the right to choose a form of insurance that limits your right . . . to seek financial compensation for injuries caused by other drivers.   Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, *but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury"*[8] . . . .

B.   "Full Tort" Option—The laws of the Commonwealth also give you the right to choose a form of insurance under which you maintain an unrestricted right . . . to seek financial compensation for injuries caused by other drivers.   Under this form of insurance, you . . . may seek recovery for all medical and other out-of-pocket expenses *and may also seek financial compensation for pain and suffering and other nonmonetary damages* . . . .

*Id.* at § 1705(a)(1) (emphasis added).   Under these provisions, therefore, an insured who has affirmatively chosen the limited tort option and who has not sustained a "serious injury" will be precluded from recovering non-economic damages.[9]   "Non-economic loss" is defined as "pain and suffering and other nonmonetary detriment."   *Id.* at § 1702.

Here, the trial court relied upon section 1705(a)(5) of the MVFRL.   That provision reads:

**7.** Section 1705 of the MVFRL was modeled after Michigan's own "verbal threshold" or "limited tort option."   *See*   Mich.Stat.Ann. § 24.13135(1) (Callaghan 1987); *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 457 N.W.2d 637 (1990).

**8.** The MVFRL defines "serious injury" as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement."   75 Pa.C.S.A. § 1702.

**9.** We note that section 1705(d) sets forth six exceptions to this general rule.

An owner of a currently registered private passenger motor vehicle who does not have financial responsibility shall be deemed to have chosen the limited tort alternative.

*Id.* at § 1705(a)(5). The trial court found that because Berger did not maintain the requisite financial responsibility on his "currently registered" 1981 Buick, he was deemed to have chosen the limited tort option. Based on this finding, coupled with Berger's stipulation that his injuries were not "serious," the trial court barred Berger from recovering any non-economic losses. *See* 75 Pa.C.S.A. § 1705(d). In so holding, the trial court quoted the following legislative history of the 1990 amendments to the MVFRL:

Q. Mr. Speaker, just a question, I guess, I am asked most often by Philadelphians and people within my district and [N]ortheast Philadelphia. When they choose limited tort— and I read it as "This form of insurance limits your right ... to seek financial compensation for injuries caused by other drivers"—their question is this: They are in an accident with an uninsured motorist. What limits do we place on that uninsured motorist that has no insurance? From the way I read it, an uninsured motorist has full access to the courts. The only thing we do to an uninsured motorist is say, you have a $300 fine and you are suspended for 30 days. My constituents want to know, does an uninsured motorist in Philadelphia have full access to the courts, while someone who chooses limited tort options has limited access to the courts? Could you answer that, please?

A. Mr. Speaker, if you turn to page 24 of the Conference Committee Report, line 10, it says, "An owner of a currently registered ... vehicle who does not have financial responsibility shall be deemed to have chosen the limited tort alternative." So in fact, what we are doing with this Bill is saying that at best, *if you are an uninsured motorist, you are limited in your rights to recovery to cases of non-economic damages only in the event of serious injury,* so we did roll back the rights of the uninsured motorist to have a full tort provision. . . .

> So what we are doing is that if you are an uninsured motorist, *the best that you can do, is avail yourself of [the] limited tort alternative in your actions against someone else....*

Trial Court Op. at 4–5 (citing *House Legislative Journal* pages 213–14, February 7, 1990) (emphasis added).

After studying the various provisions and legislative history of the MVFRL as a whole, and after considering the public policy concerns of this Commonwealth, we find that the Pennsylvania legislators did not intend for section 1705(a)(5) to apply to situations where, as here, the claimant was not operating his uninsured vehicle at the time of the accident. Respectfully, therefore, we must reverse the decision of the trial court.

■ The objective of all statutory construction is to ascertain and effectuate the legislative intent. 1 Pa.C.S.A. § 1921(a). *See Hodges v. Rodriguez,* 435 Pa.Super. 360, 645 A.2d 1340 (1994); *Callahan v. Federal Kemper Ins. Co.,* 390 Pa.Super. 201, 568 A.2d 264 (1989); *Key Savings & Loan v. Louis John, Inc.,* 379 Pa.Super. 226, 549 A.2d 988 (1988). The individual provisions of a statute are to be interpreted, whenever possible, in a manner that gives effect to the entire statute. *Consulting Engineers v. Licensure Bd.,* 522 Pa. 204, 560 A.2d 1375 (1989). Furthermore, the legislature is presumed to have intended to avoid mere surplusage; thus, whenever possible, courts must construe a statute so as to give effect to every word contained therein. *Key Savings,* 379 Pa.Super. at 232, 549 A.2d at 991 (citing *Habecker v. Nationwide Ins. Co.,* 299 Pa.Super. 463, 445 A.2d 1222 (1982); *Lukus v. Westinghouse Elec. Corp.,* 276 Pa.Super. 232, 419 A.2d 431 (1980)).

■ Subsection (b) of section 1705 concerns the application of the two tort options. Section 1705(b)(2) provides:

> *The tort option elected by a named insured shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy.* In the case where more

than one private passenger motor vehicle policy is applicable to an insured and the policies have conflicting tort options, the insured is bound by the tort option of the policy associated with the private passenger motor vehicle in which the insured is an occupant at the time of the accident if he is an insured on that policy and bound by the full tort option otherwise.

75 Pa.C.S.A. § 1705(b)(2) (emphasis added). As of this date, this section has not been interpreted by the appellate courts.

The trial court found that section 1705(b)(2) "only applies to a situation where the insured has a policy of insurance that conflicts with the insurance covering the vehicle in which the insured is an occupant at the time of the accident." We must differ with this reading because such an interpretation only gives meaning and effect to the second sentence of the section, and ignores the meaning of the first.

We construe section 1705(b)(2) as describing two, mutually exclusive scenarios. Such an interpretation is necessary to avoid surplusage. *Key Savings, supra.* The latter portion of the section clearly applies to situations where there exists two insurance policies, containing conflicting tort options. In contrast, the former provision, the provision underscored above, applies to circumstances in which only one insurance policy is involved.

Applying section 1705(b)(2) to the facts of this case, we find that Berger is not precluded from pursuing recovery for any/all non-economic losses. The parties stipulated that: under the terms of his mother's automobile policy, Berger was an "insured" for all intents and purposes; Berger's mother elected the full tort alternative; and Berger was not a named insured under any other policy of insurance. Under the plain meaning of section 1705(b)(2), therefore, the full tort option elected by mother was imputed to Berger. At the time of the accident, Berger was financially responsible as a resident/relative insured under his mother's policy. As such, it is not appropriate to apply the mandates of section 1705(a)(5) to situations where, as here, the vehicle involved in the accident

is an "insured" vehicle and the driver is an insured and financially responsible individual. On the other hand, if Berger had been driving his currently registered, but uninsured, automobile at the time of the accident, section 1705(b)(2) would not apply, and section 1705(a)(5) would clearly prohibit him from recovering for any non-economic loss.

With respect to which tort option shall apply in any given case, Representative Hayden, who supported the enactment of the 1990 amendments to the MVFRL, stated that, "in virtually every circumstance where there is a question about [which] coverage will apply, there is a conscious attempt to rule in favor of the full tort alternative." *House Legislative Journal* page 214, February 7, 1990. Based upon our review of the language and legislative intent of the 1990 amendments, we find that the trial court misapplied the law to the facts of this case. *Stahli, supra.*

Judgment reversed. Case remanded for a new trial consistent with this opinion. Jurisdiction relinquished.