**In re Jenna SLAUGHTER, a minor.**

**Appeal of Karanja Slaughter.**

Superior Court of Pennsylvania.

Argued July 28, 1999.
Filed Aug. 27, 1999.

Helen E. Casale, Franklinville, NJ, for appellant.

Mason Avrigian, Sr., Blue Bell, for participating party.

Before McEWEN, President Judge, and MUSMANNO and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Karanja Slaughter appeals the lower court's order awarding guardianship of his younger sister to Rasul and Antoinette Raheem. We affirm.

¶ 2 The subject of this action is 12–year–old Jenna Slaughter. Jenna's mother died on December 25, 1995. Her father died on July 23, 1998. The day before he died, he executed a codicil to his will naming his brother Rasul and sister-in-law Antoinette as guardians of his minor child. The father made this selection primarily because he wanted his 26–year–old son Karanja to be able to concentrate on his career as an engineer in West Chester, PA, and not be burdened with Jenna's care and welfare. Also, the Raheems, who live in Detroit, MI, have three children of their own, all around Jenna's age. Subsequent to his

father's death, Karanja petitioned for appointment of guardianship over Jenna. The Raheems contested the motion. Testimony was taken at a hearing held on February 22, 1999, after which the trial court awarded guardianship to the Raheems. This appeal followed.[1]

¶ 3 Appellant raises two questions for our review:

1. Whether the trial court's appointment of aunt and uncle as co-guardians should be reversed because it is not in the minor child's best interest?

2. Whether the trial court's factual findings support the ultimate decision to deny brother guardianship of the minor child?

Appellant's brief, at 3. Both questions are interrelated and will be addressed together.

■■■ ¶ 4 Although this case comes to us as a guardianship case, we recognize that, as between the two third-party litigants, the issue is essentially one of Jenna's custody. Our standard of review in custody matters is broad. *Wiseman v. Wall*, 718 A.2d 844, 846 (Pa.Super.1998).

While we must accept the trial court's findings of fact which are supported by the evidence, we are not bound by the trial court's deductions and inferences and therefore are capable of exercising independent judgment. We may not interfere with the trial court's conclusions, however, unless they are unreasonable in light of the trial court's factual findings and, thus, represent a (gross)[2] abuse of discretion.

*Id.* at 846–47.

■■■ ¶ 5 In child custody cases, the central guideline is to decide all cases according to the best interests of the children. *E.g., Moore v. Moore*, 535 Pa. 18, 634 A.2d 163, 169 (1993). This best interest standard is applied on a case-by-case basis and includes a consideration of all factors "which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Sawko v. Sawko*, 425 Pa.Super. 450, 625 A.2d 692, 693 (1993). Our standard of review in these cases has been summarized as follows:

"In reviewing a custody order, an appellate court is not bound by findings of fact made by the trial court which are unsupported in the record, nor is it bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of witnesses. Only where it finds that the custody order is 'manifestly unreasonable as shown by the evidence of record ...' will an appellate court interfere with the trial court's determination. Therefore, unless a trial court's ruling represents a gross abuse of discretion, an appellate court will not interfere with its order awarding custody."

*Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264, 265 (1997), *quoting E.A.L. v. L.J.W.*, 443 Pa.Super. 573, 662 A.2d 1109, 1112 (1995). With respect to this standard of review, we have stated:

"So as to facilitate this broad review, we have consistently emphasized that the hearing court must provide us not only with a complete record ... but also with a complete and comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision.... Absent an abuse of discretion, we will not

---

1. Appellant petitioned this court for a stay of the trial court's order, which we granted. Appellant subsequently moved that appellees be barred from presenting their brief or presenting oral argument for lack of timeliness, which we denied.

2. We recognize that *Commonwealth v. Brown*, 550 Pa. 580, 708 A.2d 81 (1998), declares that the term "gross" is a mere superfluous adjective.

reverse a hearing judge who complies with these requirements."

*Kozlowski v. Kozlowski*, 362 Pa.Super. 516, 524 A.2d 995, 998 (1987), *quoting Hugo v. Hugo*, 288 Pa.Super. 1, 430 A.2d 1183 (1981). It is clear, that "absent a gross abuse of discretion or manifest error, we must affirm the decision of the trial judge who had the opportunity to observe the demeanor of the parties, including the children, and listen to their testimony." *Swope*, 689 A.2d at 267.

¶ 6 As the trial court laconically observed, there is a dearth of recent case law addressing the testamentary wishes of a parent regarding guardianship of surviving minor children. We do, however, have the language of 20 Pa.C.S.A. § 2519 to guide us:

> (a) **Guardian of the person.**—A person competent to make a will, being the sole surviving parent or adopting parent of any unmarried minor child, may appoint a testamentary guardian of the person of such child during his minority, or for any shorter period except that no parent who, for one year or upwards previous to his death, shall have willfully neglected or refused to provide for his child, or who, for a like period, shall have deserted the child or willfully failed to perform parental duties, shall have the right to appoint a testamentary guardian of the person of such child.

20 Pa.C.S.A. § 2519 (P.L. 508, enacted June 30, 1972; as amended Oct. 4, 1978). We note that appellant has failed to recognize the existence of this statute entirely, and appellees only give it nodding acknowledgement. Nevertheless, the trial court cases both parties rely on, *In re Heym*, 19 Pa. D & C.3d 748 (1980), discusses the statute extensively. We do not find the rationale expressed in *Heym* persuasive, and decline to adopt it.

¶ 7 In *Heym*, the Allegheny County court was asked to rule on the validity of a testamentary provision for guardianship of a minor which read:

> In case of my death it is my wish that Miriam Schneidmill be given custody of my son George Heym. In *no* case is Richard Heym, George's father, to be granted custody since he has not been in touch with us, nor contributed to George's support for the past five years.

*Id.* at 750. Richard Heym did not contest the appointment, as his whereabouts was unknown and he remained uninvolved during the proceedings. However, the appointment was contested by Rabbi Benjamin Nadoff and his wife Miriam, with whom the child had resided for the few weeks before his mother's death. Ms. Schneidmill was a good friend of the decedent who lived in East Elmhurst, New York. The Nadoffs lived near the child's home and had seven children, two of whom were the child's age. The trial court preliminarily held that 20 Pa.C.S.A. § 2519 would apply, despite the fact that decedent was not the child's sole surviving parent. The court later held that, despite the existence of 20 Pa.C.S.A. § 2519, it would not apply a presumption in favor of the testamentary appointment but would make its determination based on a "best interest of the child" standard, with the testamentary appointment being merely one consideration in the equation. The *Heym* court subsequently determined that the best interest of the child would be served by placing him in an intact family with other children his age and thus, ruled counter to the mother's testamentary wish.

¶ 8 The instant case is not *Heym*. Here, there is no question but that the testamentary appointment was made by the child's sole surviving parent. Therefore, we have no need to theorize what type of situation our legislature envisioned the statute be applied against when it was drafted. The facts of this case land it squarely within the purview of 20 Pa.C.S.A. § 2519.

¶ 9 We cannot find fault with the trial court here for applying a "best interest of the child" standard when determining the custody of the child. As noted by our Supreme Court in *Ellerbe v. Hooks*,

490 Pa. 363, 416 A.2d 512 (1980), statutory direction as to custody has been given in instances involving disputes between parents [3] and disputes between a parent and the state.[4] *Id.* at 513. In the instance of a dispute between a parent and a third party, though, the doctrine involved has been judicially derived. *Id.*, at 513–14. Additionally, as to custody determinations among separate third parties, the burden of proof lies equally between them to establish the best interests of the child. *In re Tremayne Quame Idress R.*, 286 Pa.Super. 480, 429 A.2d 40, 44 (1981). However, the judicial standard need not concern us here, because we have a statute on point that compels our decision.

¶ 10 As previously noted, 20 Pa.C.S.A. § 2519 directly addresses the situation presented here. Father was the sole surviving parent of the minor child and he made a testamentary provision for the guardianship of that child after his death.[5] The lower court chose to view the statute as being merely directory, and viewed the testamentary appointment as only one factor to be considered in determining the "best interests of the child." While we do not disagree with Judge Ott's well-reasoned analysis of the child's best interests, we find it unnecessary to tread that path because we initially find the statute controlling, and not merely directory.

¶ 11 When construing a statute, our objective is to ascertain and effectuate the legislative intent. 1 Pa.C.S.A. § 1921(a); *see also Berger v. Rinaldi*, 438 Pa.Super. 78, 651 A.2d 553, 557 (1994). In so doing, we must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage. *Id.* Accordingly, "whenever possible, courts must construe a statute so as to give effect to every word contained therein." *Id.*

¶ 12 We read the word "may" in the present statute to mean that the appointment of a testamentary guardian by a parent is a right granted by the legislature which the parent need not exercise. We cannot, however, reasonably read the term to mean that enforcement of the testamentary guardianship is optional on the courts. To do so would render the statute an absurdity; it would give the parent a right that has no enforceable value. "When interpreting a statute, it is presumed that the legislature did not intend an absurd or unreasonable result." *Commonwealth v. Diakatos*, 708 A.2d 510, 512 (Pa.Super.1998). We are compelled to ask, "who better than the surviving parent should make the choice as to who might care for her child after her death?" And we are further compelled to find that 20 Pa.C.S.A. § 2519 grants just this very right, and the testating parent has every right to expect the statute to be enforced. Therefore, contrary to appellant's assertion, we find that the statute necessarily raises a *prima facie* presumption in favor of the testamentary appointment. However, the presumption, as with similar presumptions in favor of the parent, is not irrebuttable. The appointment may be defeated upon a showing of convincing reasons as to why it should not stand. *Ellerbe*, 416 A.2d at 513.[6] The challenging party bears the

---

3. 48 P.S. § 92, *repealed* 1990; *see now* 23 Pa.C.S.A. § 5303.

4. 42 Pa.C.S.A. § 6301 *et seq.* or 11 P.S. § 2201 *et seq.*

5. We note for the record that the question of undue influence over the father's deathbed appointment seems to be lurking just below the surface of appellant's argument. Since the issue was never formally raised in the court below or on appeal, we will not address it.

6. Our Supreme Court's decision in *Rowles v. Rowles*, 542 Pa. 443, 668 A.2d 126 (1995), purported to abolish the parental presumption in custody determinations. This Court has noted on numerous subsequent occasions, however, that the alleged abolishment was part of a plurality decision that did not command a majority of the justices. It is therefore not binding precedent and thus, the *Ellerbe* rule remains in force in Pennsylvania. *See Argenio v. Fenton*, 703 A.2d 1042, 1044 n. 2 (Pa.Super.1997); *J.A.L. v. E.P.H.*, 453

burdens of production and persuasion; that burden is a heavy one. *Id.* at 514.

 ¶ 13 In summation, we find that Judge Ott did not abuse his discretion in finding that the best interests of the child were served by granting guardianship over the person of the child to appellees. We also find, however, that the legislative directive of 20 Pa.C.S.A. § 2519 establishes a presumption in favor of the testamentary appointment. Absent compelling proof that the appointment would *not* be in the best interests of the child, the appointment should stand.

¶ 14 Order affirmed.

¶ 15 McEWEN, President Judge, Concurs in the Result.

Pa.Super. 78, 682 A.2d 1314, 1319 n. 2 (1996).