**Andreyo v. Radle**

C.P. of Dauphin County, no. 4264 S 2000.

*Scott W. Morgan,* for plaintiff.
*John A. Statler,* for defendant.

EN BANC, KLEINFELTER, *P.J.*, CHERRY, AND HOOVER, *JJ.*

KLEINFELTER, *P.J.,* April 1, 2002—This is the summary judgment motion of defendant Nicholas A. Radle in this automobile accident case. For the reasoning asserted below, Radle's motion is denied.

We begin with a recitation of the pertinent facts. On October 8, 1997, Radle was driving his car along South 23rd Street when he struck plaintiff Matthew Andreyo. Matthew, who was 15 years old at the time and resided with his father, Joseph Andreyo, suffered injuries to his left knee. Sadly, Matthew passed away on January 11, 2001, of circumstances unrelated to this accident.

Matthew instituted this cause of action by filing a complaint on September 26, 2000, asserting negligence against Radle. The complaint does not assert a claim for economic losses. Thereafter, on November 9, 2000, Radle filed an answer with new matter. In his new matter, Radle asserts that Matthew's claims are barred by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., since Matthew's father elected the limited tort option on his automobile insurance and Matthew was considered an "insured" under that policy. Matthew filed a reply to Radle's new matter on November 14, 2000.

The matter presently for our consideration is Radle's motion for summary judgment, filed June 19, 2001. Both

parties have submitted briefs supporting their respective positions, and a three-judge panel of this court entertained oral argument on August 16, 2001. As a preliminary matter, we note the standard promulgated by our appellate courts to guide us in deciding a summary judgment motion.

"[S]ummary judgment is properly granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' . . . Summary judgment may be granted only in those cases where the right is clear and free from doubt. . . . The moving party has the burden of proving that there is no genuine issue of material fact. . . . Moreover, the record and any inferences therefrom must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. . . ." *Bigansky v. Thomas Jefferson University Hospital,* 442 Pa. Super. 69, 73-74, 658 A.2d 423, 425 (1995), *appeal denied,* 542 Pa. 655, 668 A.2d 1119 (1995) (citations omitted); see also, *Green v. Paul Revere Insurance Group,* 121 Dauph. Cty. Rep. 63 (2001).

The threshold issue is whether a pedestrian (here a minor) who is injured through the negligence of a motor vehicle operator is limited in his recovery by his father's election of the limited tort option[1] in his automobile in-

---

1. *(d) Limited tort alternative*—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. *Unless the in-*

surance policy. More directly, were pedestrian accidents contemplated to fall within the purview of the MVFRL?

We have found no appellate authority that directly answers this question. We emphasize "directly" since the case of *Murray v. McCann,* 442 Pa. Super. 30, 658 A.2d 404 (1995) (relied on by Radle), which is factually akin to the case at bar, would appear to answer this question in the affirmative. *Murray,* however, is of limited value since the only legal issue on appeal was the application of the "serious injury" exception under section 1705 of the MVFRL. Thus, the persuasiveness of *Murray* is limited to that of dicta.

---

*jury sustained is a serious injury,* each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, except that:

"(1) An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault

"(i) is convicted or accepts accelerated rehabilitative disposition for driving under the influence of alcohol or a controlled substance in that accident;

"(ii) is operating a motor vehicle registered in another state;

"(iii) intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

"(iv) has not maintained financial responsibility as required by this chapter, provided that nothing in this paragraph shall affect the limitation of section 1731(d)(2) (relating to availability, scope and amount of coverage)." 75 Pa.C.S. §1705. (emphasis added)

"Serious injury" is defined in 75 Pa.C.S. §1702: "A personal injury resulting in death, serious impairment of bodily function or permanent serious disfigurement."

Several county courts have addressed the pedestrian issue directly. In *Leidy v. Hall,* 77 Lancaster L.Rev. 561 (2001), the Lancaster County Court of Common Pleas, relying on *Murray,* applied the MVFRL and the limited tort option to a pedestrian. The Lancaster court also cited *Reidinger v. Linebaugh,* 35 D.&C.4th 78 (Lanc. Cty. 1998); but that case, too, only concerned a "serious injury" analysis.

Similarly, in *Eckler v. Watson,* 29 Mercer L.J. 393 (2001), the court held that, as the statutory listing of exceptions in the MVFRL does not except pedestrians in a motor vehicle accident, they must necessarily be bound by an election of the limited tort option in their insurance policy. Likewise, in *Spearman v. Rabe,* 146 Pitts. L.J. 111 (Allegheny Cty. 1998), the Allegheny Court of Common Pleas applied the limited tort provisions of the MVFRL, without analysis, to a pedestrian.

On the other hand, the Blair County Court of Common Pleas has reached a contrary result. In *Stotler v. Bickel,* 96 CP 519 (Blair Cty. slip op. 1998), the court addressed the issue as to whether the MVFRL applied to a pedestrian who was also the owner of an uninsured vehicle. Granted, the uninsured aspects of the MVFRL address a different issue than the limited tort option, but the force of logic applies equally to both. In refusing to hold the plaintiff to the terms of section 1714, the *Stotler* court relied on the Superior Court's analysis in *Kafando v. State Farm Mutual Automobile Insurance Co.,* 704 A.2d 675 (Pa. Super. 1998): "the deterrent purpose of section 1714 is not advanced by withholding benefits from a party who owns an uninsured motor vehicle but who is nevertheless injured while riding as a passenger

in an insured vehicle." Section 1714 did not apply since the plaintiff "was not operating his own uninsured vehicle at the time of the accident." *Id.* at 676.

*Kafando* relies in large part on the logic of our Supreme Court in *Henrich v. Harleysville Insurance Companies,* 533 Pa. 181, 620 A.2d 1122 (1993):

"The MVFRL [Motor Vehicle Financial Responsibility Law] replaced the former 'no-fault' statute, P.L. 489, no. 176 (1974). The MVFRL was designed to deter people from failing to insure their vehicles more forcefully than the prior statute. This is the purpose of section 1714. If [the claimant] had been injured while operating her own uninsured but registered motor vehicle, we can see how it could at least be argued that the deterrent purpose of section 1714 might be applied to her so as to prevent her from recovering under her father's insurance policy. However, those are not the facts in the instant case (and we express no opinion as to how we would decide this case if they were). Here, [the claimant] was hurt while a passenger in her friend's uninsured motor vehicle. It is hard to see how punishing a person like [the claimant] or the threat of punishing her, would deter someone like her driver, an unrelated third party, from neglecting to procure auto insurance. Likewise, it is draconian to punish [the claimant] for failing to insure her own car when she was not injured in it or hurt by it. Indeed, she was not even driving it. We cannot attribute either such unrealistic or harsh motives to the legislature unless they were clearly spelled out. We hold that section 1714 does not apply to [the claimant] because she was not operating her *own* uninsured motor vehicle at the time of the accident." *Kafando,* 704 A.2d at 677 quot-

ing *Henrich,* 533 Pa. at 185, 620 A.2d at 1124. (emphasis in original)

*Kafando* also relied heavily on *Berger v. Rinaldi,* 438 Pa. Super. 78, 651 A.2d 553 (1994), which held that the limited tort option, section 1714(a)(5), was not applicable to a plaintiff who was not operating his uninsured vehicle at the time of the accident.

*Stotler, supra,* concludes: "Following this reasoning, it would be highly incongruent for this court to permit application of section 1714 to a pedestrian when it does not apply to a passenger." *Stotler* at 4. We subscribe to the *Stotler-Kafando-Berger* analysis, as it seems illogical to deny full tort coverage to a pedestrian plaintiff, who, at the time he was struck, had absolutely no connection with his father's automobile.

We further divine legislative intent by returning to the language of section 1705(a) and the required Notice To Named Insureds: "The laws . . . give you the right to choose a form of insurance that limits your right and the right of members of your household . . . for injuries *caused by other drivers.*" "Caused by *other* drivers" necessarily implies that there is *another* driver in addition to the plaintiff *driver.*

We place no weight on defendant's argument that "pedestrians" are not mentioned in the "exceptions" subparagraph (d) of section 1705 since we conclude that section (b), application of tort options, is intended to apply only to operators or passengers of vehicles. To illustrate this point we need only look at the language in section (b)(2), which provides for resolution of the conflict that necessarily arises where "an insured" is covered by more than one policy. In such case, the section

provides that he is covered by the policy covering the vehicle *"in which the insured is an occupant* at the time of the accident." (emphasis added)

The MVFRL, in this court's opinion, was not intended to apply to "an insured" when the "insured" is a pedestrian, on some other non-automobile conveyance; or, for that matter, sitting in his living room should an errant automobile come crashing through his door.

Had we held that the limited tort option applied to Matthew Andreyo, we would next need to evaluate whether Matthew's injuries were "serious" as contemplated by section 1705.[2] Instead, we may consider the noneconomic damages alleged in Matthew's complaint, namely, the pain and suffering and emotional distress claims. Included in Matthew's response to Radle's motion for summary judgment is the operative report pertaining to the medical treatment he received following the car accident. The report provides a possible basis of recovery for pain and suffering as well as emotional distress damages resulting from his injuries. This evidence, of course, necessarily implicates issues of factual determination. As such, we cannot quantify such damages as a matter of law and are required to deny Radle's motion.

We enter the following:

## ORDER

And now, April 1, 2002, upon consideration of the motion for summary judgment submitted by defendant Nicholas A. Radle, said motion is hereby denied.

---

2. We agree with the dissent that Matthew's injuries were not "serious" as a matter of law and that, if the MVFRL were applicable, he would fall within the ambit of an "insured."

CHERRY, *J.,* Concurring, April 1, 2002—The facts of this case have been recited in the majority's decision and need not be restated here. As was indicated in the opinion, our courts are divided on the pedestrian issue as it pertains to the limited tort option of the Pennsylvania Motor Vehicle Financial Responsibility Law. Therefore it seems prudent that this issue be fully addressed in order that a definitive conclusion replace the differing schools of thought that have developed throughout the Commonwealth.

The purpose here is not to legislate from the bench. Rather, the goal is to determine and uphold the legislative intent espoused by our lawmakers through the statutes. To this end, as President Judge Kleinfelter thoroughly explained, it is not logical to assume a result that would deny full tort coverage to persons wholly unconnected to an automobile. The MVFRL begs a conclusion that pedestrians simply are not to be included within the perimeters of the statute.

In support of this conclusion and in addition to the reasoning found in Judge Kleinfelter's opinion, the language of the statute is replete with references and verbiage indicating the election of tort options is meant for cases involving motor vehicles and other operators of motor vehicles, but not pedestrians. For example, the insurance policies mentioned in the statute all pertain to private passenger *motor vehicle* liability. The very fact that one must obtain motor vehicle insurance and choose one of the options implies that contemplated coverage will deal with accidents between drivers of motor vehicles.

Even the legislature has opined a desire to ordain the full tort option as the default option as evidenced by the following quote:

"With respect to which tort option shall apply in any given case, Representative Hayden, who supported enactment of the 1990 amendments to the MVFRL, stated that, 'in virtually every circumstance where there is a question about [which] coverage will apply, there is a conscious attempt to rule in favor of the full tort alternative.' *House Legislative Journal* page 214, February 7, 1990." *Berger v. Rinaldi,* 438 Pa. Super. 78, 88, 651 A.2d 553, 557 (1994).

It seems disingenuous to favor the full tort option when possible, but at the same time hold a pedestrian to a limited tort election. Granted, the decedent here was an insured under his father's limited tort option motor vehicle insurance. This court would have no trouble in holding a minor to his adult parent's limited tort election if the minor were the operator of a motor vehicle or even a passenger in a motor vehicle at the time of an accident. However, in this case, the injured was not an operator of, nor was he a passenger in, a motor vehicle at the time of the accident.

The answer to this dilemma could be simply that the legislative branch of the Commonwealth, by omitting the term pedestrian from the statute, thought it obvious that pedestrians were to be omitted from consideration when dealing with the MVFRL. The omission of the word "pedestrian" from the MVFRL is telling in that it may very well mean that pedestrians are not included in the mechanics of the statute.

Further examination of the MVFRL, specifically section (b)(2), declares "the insured is bound by the tort option of the policy associated with the private passenger motor vehicle in which the insured is an *occupant* at the time of the accident." 75 Pa.C.S. §1705(b)(2). (emphasis added) Moreover, "[a] basic tenant of statutory construction is to afford the words of a statute their plain meaning." *Carlino v. Bartley,* 49 D.&C.4th 1, 6 (2000) (citing 1 Pa.C.S. §1903(a)). Thus we have examples of the statute referring to motor vehicles and occupants of motor vehicles, but not pedestrians. The logical conclusion is that a pedestrian, wholly unattached to a motor vehicle whether as owner, operator, passenger, or any other type of occupant, is not contemplated to fall within the purview of the MVFRL.

The judiciary is simply not empowered to insert words or phrases into the statutes promulgated by the legislature, and we will not do so in this case. As our Supreme Court has instructed, "[i]n construing a statute, the court must ascertain and give effect to the legislative intention as expressed in the language of the statute, and cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted." *Kusza v. Maximonis,* 363 Pa. 479, 482, 70 A.2d 329, 331 (1950). Notwithstanding the court's place in determining or interpreting legislative intent, circumstances may arise where it may be necessary to add an explanatory word or two. However, any additional words or phrases cannot alter the scope of the statute. *O'Donoghue v. Laurel Savings Association,* 556 Pa. 349, 357, 728 A.2d 914, 917 (1999), citing *Kusza v. Maximonis, supra.* Reading the statute so

as to contain the word "pedestrian" certainly alters the scope of the statute in that the statute would be judicially expanded to include not only accidents between drivers of motor vehicles and other drivers, but also accidents between motor vehicles and pedestrians.

Perhaps the legislature will see fit to address this omission, but that act is for that governmental body on another day. I concur with Judge Kleinfelter's opinion in this case in both the decision and in the reasoning.

---

HOOVER, *J.,* Dissenting, April 1, 2002—Based upon our review of the language of the Pennsylvania Motor Vehicle Responsibility Law, the Superior Court's analyses in analogous cases, and instructive common pleas decisions of other courts, we respectfully dissent, and would conclude that the restrictions of 75 Pa.C.S. §1705 (limited tort), apply to a pedestrian struck and injured by a motor vehicle who is an "insured" under a policy for which the limited tort option has been affirmatively elected. We would also find, as a matter of law, that plaintiff has not presented evidence sufficient to demonstrate that the scar he allegedly sustained constitutes a "serious injury" in the form of a "serious permanent disfigurement" under the Pennsylvania Motor Vehicle Responsibility Law. Accordingly, we would hold that plaintiff's claims are not recoverable, and would grant defendant's motion for summary judgment.

We highlight the factual background reflecting that plaintiff filed a complaint alleging that as a result of the accident, he suffered severe injury, including scarring,

and mental and emotional distress. Certainly plaintiff would claim that his injuries were caused by the operation of a motor vehicle, a significant factor in view of the majority's analysis.

We also note, on the issue of plaintiff's claims of injuries, that the record does not include any written discovery, depositions or affidavits. All that we know of plaintiff's alleged injuries is offered by way of exhibit to defendant's motion for summary judgment: an emergency department note relating to treatment of the plaintiff on October 8, 1997, notes of a history and physical examination, progress notes, an x-ray report, an operative report dated October 7, 1997, a discharge summary dated October 10, 1997, and an undated copy of a photograph of plaintiff.

Because we would find that plaintiff is bound by the limited tort option, we would apply the traditional summary judgment analysis to determine whether the case is clear and free from doubt as to whether plaintiff sustained a "serious injury," and find that he has not. See *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998).

A. *As an "Insured" Under His Father's Policy,*
*the Plaintiff-Pedestrian Is Bound by the*
*Limited Tort Election*

We feel it necessary to provide additional background regarding the Motor Vehicle Responsibility Law. The Pennsylvania Motor Vehicle Responsibility Law, 75 Pa.C.S. §1705 allows policyholders of private passenger motor vehicles to elect a limited tort option or a full tort option. An amendment of the MVFRL to include the

option of tort election was one of the legislative attempts to reduce increasing insurance rates. The amendments, known as Act 6 of 1990, "made numerous changes to motor vehicle insurance law in Pennsylvania. These changes were made to redress what most observers believed were the root causes of the automobile insurance crisis—escalating health care costs and the increasing number of automobile tort lawsuits." *Berger v. Rinaldi,* 438 Pa. Super. 78, 82, 651 A.2d 553, 555 (1994).

We do not believe, as the majority would suggest, that this court need enter into a causation analysis which excepts from the limited tort election "an insured" based upon his status as a pedestrian. Surely the injury of a pedestrian by a motor vehicle is not so remote a consequence of the operation of a motor vehicle to have been unintended by the legislature.

A person who has elected or otherwise bound by the limited tort option is precluded from maintaining an action for noneconomic losses[1] unless he has suffered a "serious injury,"[2] or statutory exceptions to limited tort applies. An insured who selects the limited tort option under the Motor Vehicle Financial Responsibility Law affirmatively agrees, in exchange for a lower premium rate, that any potential tort action for noneconomic damages is precluded where injuries are not serious. *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995). Sec-

---

1. Noneconomic loss is defined as "pain and suffering and other nonmonetary detriment." 75 Pa.C.S. §1702.

2. The Motor Vehicle Financial Responsibility Law defines "serious injury" as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702.

tion 1705 of the MVFRL provides for this election as follows:

"Notice To Named Insureds

"*(A) 'Limited tort' option*—The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other members of your household covered under this policy may seek recovery for all medical and other out-of-pocket expense but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury' as set forth in the policy, or unless one of several other exceptions noted in the policy applies . . . ." 75 Pa.C.S. §1705(a)(1)(A).

The majority agrees that there is no difficulty in concluding that Matthew Andreyo was an "insured" on a limited tort policy. There is no dispute that his father, Joseph Andreyo, elected the limited tort option on his automobile insurance policy. There is also no dispute that Matthew Andreyo resided in his father's household. Minor children residing in their parents' household are subject to the same tort option as elected by their parents. See *Hames v. Philadelphia Housing Authority,* 696 A.2d 880 (Pa. Commw. 1997), *appealed after remand, Hames ex rel. Hames v. Philadelphia Housing Authority,* 737 A.2d 825 (Pa. Commw. 1999); *Berger v. Rinaldi,* 438 Pa. Super. 78, 651 A.2d 553 (1994). Further, section 1705(b)(2) of the Pennsylvania Motor Vehicle Financial Responsibility Law provides that "the tort option elected by a *named insured* shall apply to *all insureds* under

the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy." 75 Pa.C.S. §1705(b)(2). (emphasis added) The term "insured" includes those "residing in the household of the named insured, a minor in the custody of either the named insured or relative of the named insured." 75 Pa.C.S. §1702. Therefore, because Joseph Andreyo was a named insured, and Matthew Andreyo was a minor residing in his household, Matthew Andreyo was an "insured" on the limited tort option policy purchased by his father.

We are perplexed by the majority's recitation of the issue at hand. (More directly, were pedestrian accidents contemplated to fall within the purview of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq.?) We believe that the majority distorts the correct issue, that is, the applicability of the limited tort election to a pedestrian, by questioning at the outset whether the legislature contemplated that pedestrian accidents would fall within the purview of the MVFRL. We would point out that the language of both the full tort and limited tort provisions apply to losses *"sustained in a motor vehicle accident as a consequence of the fault of another person pursuant to applicable tort law,"* in other words, causally related. See 75 Pa.C.S. §1705(c) full tort alternative, and section 1705(d) limited tort alternative. We view the causation requirements the same under both full and limited tort. Accordingly, we do not believe it is appropriate or logical to undertake a separate analysis of causation under the limited tort option. There being no dispute that plaintiff claims that a motor vehicle caused his injuries, we look to the

pivotal issue of whether plaintiff was an insured, so as to be bound by the election of the policyholder.

We further disagree with the majority's suggestion that pedestrians are not bound by the limited tort option based upon the language of section 1705, which references application of the limited tort option to "injuries caused by *other drivers*." While the majority points to such language to find that pedestrians are not *drivers* and therefore excepted from the limited tort election, illogically, it would not suggest that passengers, also not *"drivers"* are similarly excepted.

We also disagree with the conclusion that the limited tort option does not apply to pedestrians, based upon, inter alia, rules of statutory construction. We first look to the plain language of the statute. The MVFRL recognizes several exceptions to limited tort election, none of which apply here.[3] This court may not read into the stat-

---

3. "(1) An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as a consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

"(i) is convicted or accepts accelerated rehabilitative disposition for driving under the influence of alcohol or a controlled substance in the accident;

"(ii) is operating a vehicle registered in another state;

"(iii) intends to injure himself or another person . . .; or

"(iv) has not maintained financial responsibility as required by this chapter . . .;

"(2) An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles arising out of defect of such motor vehicle which is caused by or not corrected by an act or omission in

ute an exception which does not exist. "Exceptions expressed in a statute shall be construed to exclude all others." 1 Pa.C.S. §1924. Further, "[i]t is not within the province of this court to second-guess the legislature and to add words to a statute where the legislature has failed to supply them." *Guinn v. Alburtis Fire Co.,* 531 Pa. 500, 503 n.4, 614 A.2d 218, 220 n.4 (1992), citing, *Kusza v. Maximonis,* 363 Pa. 479, 482, 70 A.2d 329, 331 (1950); see also, *O'Donoghue v. Laurel Savings Association,* 556 Pa. 349, 357-58, 728 A.2d 914, 917-18 (1999). Accordingly, we must conclude that the legislature did not intend to exclude pedestrians from limited tort status.

We reject the conclusion that this issue, not yet decided by our appellate courts, should be governed by a purported legislative intent to "provide full tort coverage whenever there is a question of whether the full tort or limited tort option is applicable." Because we rely upon a clear rule of statutory construction which precludes us from reading into the statute an exception for pedestrians which does not exist, we find it unnecessary to refer to broad statements as to legislative intent. See *Washington v. Baxter,* 553 Pa. 434, 442, 719 A.2d 733, 738 (1998). ("It is axiomatic that in construing statutory material, we first examine the language of the statute in question. If the language in question is unambiguous, we may not avoid its plain application under the pretext that we are remaining faithful to the legislature's intent.")

the course of such business other than a defect in a motor vehicle which is operated by such business.

"(3) An individual otherwise bound by the limited tort election shall retain full tort rights if injured while a passenger of a motor vehicle other than a private passenger vehicle." 75 Pa.C.S. §1705(d)(1)-(3).

While no appellate cases have directly addressed whether the limited tort election applies to pedestrians, we find that several provide an instructive framework applicable to the issue. We would also follow the analyses of other common pleas decisions which we find most sound and logical. Based upon these, Matthew Andreyo's status as an "insured" on an affirmatively elected limited tort policy, rather than his geographic position as a pedestrian, is dispositive of his claim.

The Superior Court has, in fact, applied limited tort status to a minor pedestrian whose parent affirmatively elected the limited tort option. In *Murray v. McCann,* 442 Pa. Super. 30, 658 A.2d 404 (1995), the Superior Court held sub silentio that the limited tort option applied to a pedestrian. The 17-year-old plaintiff in *Murray* was struck by a car while crossing a street. Her mother had chosen the limited tort option. Apparently finding no need for further discussion of the issue, the Superior Court stated that the mother's choice of the limited tort option limited the plaintiff's right to recover noneconomic losses. The court found that the trial court applied the correct legal standard in deciding that plaintiff did not suffer serious impairment of bodily function. *Id.* at 38, 658 A.2d at 408.

Two appellate cases cited as supportive of the proposition that a pedestrian is not subject to the restrictions of the limited tort option, in fact, lead us to the opposite conclusion. In both cases, the Superior Court looked to the plaintiffs' status as an "insured" to determine whether they were bound by the limited tort option.

In *Berger v. Rinaldi,* 438 Pa. Super. 78, 651 A.2d 553 (1994), the Superior Court reversed the trial court's de-

cision that the plaintiff, Mr. Berger, was bound by the limited tort option, finding that he was an "insured" on a full tort policy. In that case, Mr. Berger was a vehicle owner who failed to maintain financial responsibility as required by the MVFRL. At the time of the accident at issue, Berger was operating his mother's vehicle, which carried the full tort option. Berger resided with his mother, and the parties stipulated that under the terms of the mother's policy, he was an "insured." The trial court found that because Berger failed to carry insurance, he was deemed to have chosen the limited tort option.

In reversing the trial court's decision, the Superior Court looked to the parties' stipulation that Mr. Berger was an "insured" on the mother's full tort policy. The court also relied heavily upon 75 Pa.C.S. §1705(b)(2) which provides, in relevant part, that "[t]he tort option elected by a named insured shall apply to *all insureds* under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy . . . ." The plaintiff's status was therefore governed by his designation as an *insured* on a full tort policy.

Also, in *Ickes v. Burkes,* 713 A.2d 653 (Pa. Super. 1998), the court looked to whether the non-driver plaintiff was an "insured" to determine her entitlement to limited or full tort status. In *Ickes,* the plaintiff, Mrs. Ickes was injured while riding as a passenger in a vehicle operated by the defendant Burkes, and owned by plaintiff's husband, Mr. Ickes. Mr. Ickes' vehicle was registered, but not insured, at the time of the accident. He was, therefore, "uninsured," and deemed to have chosen the limited tort option by failing to insure his vehicle. 75 Pa.C.S.

§1705(a)(5). The appellant Burke argued that, therefore, Mr. Ickes became a "named insured" of a limited tort policy, and, accordingly, his wife, residing in his household, was an "insured" of a limited tort policy.

In rejecting this argument, the court looked closely at the statute's use of the terms "named insured" and "insured." The court refused to read into the statute language which did not appear, and held that because Mrs. Ickes was not an "insured" under any policy she was not bound by the tort option elected by a "named insured." *Id.* at 656. Again, the Superior Court looked to whether the claimant was an "insured" on a limited tort policy.

In *Berger* and *Ickes,* the Superior Court based its determination of whether a plaintiff was bound by limited tort status upon whether that plaintiff was an "insured" on an affirmatively elected limited tort policy. Applying that analytical framework to the case at bar, we conclude that because Matthew Andreyo was an "insured" under the limited tort policy elected by the named insured, his father, Matthew Andreyo is bound by that election.

In reaching the conclusion that plaintiff is bound by the limited tort election, and not excepted by virtue of his status as a pedestrian, we also look to instructive common pleas decisions. While diversity exists among the holdings of other common pleas courts which have addressed this issue, several decisions provide sound analysis and guidance. In *Leidy v. Hall,* 77 Lancaster L.Rev. 561 (2001), the Lancaster County Court of Common Pleas held that the limited tort option applied to the personal injury claims of a pedestrian who made that election on his automobile insurance policy. The court rejected the plaintiff's argument that he was not bound by

that election because he was not occupying his vehicle at the time of the accident. In rejecting that argument, as well as plaintiff's reliance upon two cases from Blair County,[4] the court focused upon the plaintiff's affirmative election of the limited tort option.

Also, in *Eckler v. Watson,* 29 Mercer L.J. 393 (2001), the court held that the limited tort election of the plaintiff's husband applied to the pedestrian-wife plaintiff. The court noted that the exceptions to limited tort election set forth in the MVFRL do not include pedestrians. The court reasoned that, except where specifically stated, *e.g.* Pa.C.S. §1705(a)(1)(A) and (B), the location of the injured party is not a factor. *Id.* at 399.

Similarly, in *Spearman v. Rabe,* 146 Pitts. L.J. 111 (Allegheny Cty. 1998), the Allegheny County Court of Common Pleas held that a plaintiff struck by a vehicle while directing traffic at a construction site was bound by his election of the limited tort option. The court looked to plaintiff's election of that option as controlling, rather than his location as a pedestrian.

We would respectfully decline to follow cases of other common pleas courts which have reached the opposite result. In *Stotler v. Bickel,* 96 CP 519 (Blair Cty. slip op. 1998), the court held that the limited tort option did not apply to a pedestrian injured by a motor vehicle. In its opinion, the court relied upon *Kafando v. State Farm Mutual Automobile Insurance Co.,* 704 A.2d 675 (Pa. Super. 1998), and *Henrich v. Harleysville Insurance Companies,* 533 Pa. 181, 620 A.2d 1122 (1993). Neither

---

4. *Baker v. Campbell,* 98 GN 6518 (Blair Cty. 2000), and *Stotler v. Bickel,* 96 CP 519 (Blair Cty. slip op. 1998).

of those cases address the issue of limited tort status; *Kafando* involved a claim for first-party benefits, and *Henrich* a claim for uninsured motorist coverage. Accordingly, the analysis of the court in *Stotler* is not helpful to the matter sub judice.

Nor would we rely upon *Baker v. Campbell,* 98 GN 6518 (Blair Cty. 2000). In *Baker,* the court held that a pedestrian struck by a vehicle was not bound by his election of the limited tort option. In reaching its holding, the court relied upon its earlier opinion, *Stotler,* which we choose not to follow, and case law interpreting the definition of a "private passenger motor vehicle," not at issue here. See *Gettis v. Crawford,* Schuylkill County, no. 513-1997 (February 4, 1999). That court also looked to general rules of statutory construction which we do not find applicable.

Accordingly, we would find that where a pedestrian claiming injury is an "insured" under a policy for which there has been an affirmative election of the limited tort option, the injured pedestrian is bound by that election, and must prove a "serious injury" under the MVFRL in order to recover noneconomic damages.

### B. As a Matter of Law, Plaintiff Cannot Demonstrate That He Has Suffered a "Serious Injury" Under the Pennsylvania Motor Vehicle Financial Responsibility Law

Based upon the standards governing grant of summary judgment, the factors enunciated in *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998), and review of the record before us, we would find that plaintiff has not

adduced sufficient evidence to prove a "serious injury" and would grant summary judgment.

Review of defendant's motion for summary judgment, as in all summary judgment cases, requires that we view the record in the light most favorable to the non-moving party, and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Washington v. Baxter,* 533 Pa. 434, 441, 719 A.2d 733, 737 (1998), citing *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 143-45, 615 A.2d 303, 304 (1992). Pennsylvania Rules of Civil Procedure provide that the "record" includes any

"(1) pleadings,

"(2) depositions, answers to interrogatories, admissions and affidavits, and

"(3) reports signed by an expert witness that would, if filed comply with Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories." Pa.R.C.P. 1035.1 motion for summary judgment. Definition.

Further, "[i]n order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Washington v. Baxter, supra* at 441, 719 A.2d at 737, citing *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996).

The record in this matter, relevant to the determination of whether plaintiff's injury is "serious" as defined in the MVFRL, consists of an emergency department note, an operative report relating to irrigation, debridement and closure of plaintiff's left knee laceration, progress notes, a discharge summary, and an undated photograph of plaintiff.

Plaintiff's brief acknowledges that the scar, purportedly depicted in the photograph, is the sole injury at issue. Having determined that plaintiff is bound by the provisions of the limited tort option, we would next look to whether, based upon this record, the scar depicted in the photograph is a "serious injury."

We believe that there is insufficient evidence upon which a jury could determine that plaintiff suffered a "serious injury." The MVFRL defines "serious injury" as "a personal injury resulting in death, serious impairment of body function or *permanent serious disfigurement.*" 75 Pa.C.S. §1702. The record in this case is insufficient upon which a jury could make that determination. In *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998), in affirming the entry of summary judgment against a plaintiff claiming "serious injury," the court addressed the type and quality of evidence which the plaintiff must adduce to withstand summary judgment. The Supreme Court stated therein, "[g]enerally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any

other relevant factors." *Washington,* 553 Pa. at 447-48, 719 A.2d at 740, quoting *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896, 901 (1986).

The *Washington* court noted that documents relied upon by the plaintiff in responding to the motion for summary judgment, purportedly generated by a treating physician, were not sworn to, nor did they even bear the signature of the physician. Further, that record lacked an opinion of a physician rendered to a reasonable degree of medical certainty. Even considering the plaintiff's own testimony as to the injury, the court found that the plaintiff failed to present sufficient evidence that would require the issue to go to a jury. *Washington,* 553 Pa. at 448-49, 719 A.2d at 741.

Applying those standards to the record before us, we believe that insufficient evidence exists upon which a jury could find that plaintiff sustained a serious injury, in this case, a permanent serious disfigurement. The record does not include the deposition or sworn statement of a physician, nor any medical opinion as to the permanency of the alleged scarring. In fact, none of the medical records produced reference a permanent scar, its dimensions, or prognosis for improvement. (Plaintiff asserts that the scar is "at least seven centimeters.") (Plaintiff's response to defendant's motion for summary judgment, ¶6.) To submit the issue of "permanent disfigurement" to a jury would invite speculation. Further, no evidence appears of record as to the date of the photograph allegedly depicting the scar. The record does not include a deposition of the plaintiff; because plaintiff is deceased, the jury would have no opportunity to see the alleged injury. Even viewing that photograph, and all

other evidence of record, in a light most favorable to the plaintiff, we believe that it is inadequate to support a finding of a permanent serious disfigurement. Accordingly, plaintiff could not prove a cognizable claim for noneconomic damages, and we would grant defendant's motion for summary judgment.

For all of the foregoing reasons, we dissent from the decision of the majority.