J-S72030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.A.S., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| B.J.L., | : | |
| | : | |
| Appellant | : | No. 1027 WDA 2014 |

Appeal from the Order Entered May 15, 2014,
In the Court of Common Pleas of Elk County,
Civil Division, at No. 2013-604.

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 16, 2015**

B.J.L. ("Maternal Grandmother") appeals from the order entered on May 15, 2014, which awarded primary physical custody of C.J.S. ("Child"), born in August of 2010, to Child's paternal grandmother, J.A.S., ("Paternal Grandmother"), awarded partial physical custody of Child to Maternal Grandmother, and awarded equally shared legal custody, all in accordance with a schedule, pursuant to the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321 to 5340.[1]  We affirm.

The trial court set forth the factual background and procedural history in its Discussion and Findings of Fact as follows:

---

*Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, N.S. ("Mother"), died in June of 2013, and Child's father, D.J.S., died in December of 2012.  Trial Court Opinion, 5/15/14, at 3.

This custody action was initiated by the filing of a custody complaint on July 12, 2013, by [Paternal Grandmother]. A collateral petition for appointment of guardian of the person of a minor child and appointment as emergency guardian was filed on July 18, 2013, to No. 2013-7-OC in the Orphan's Court Division of the Cameron County Branch of the Fifty-Ninth Judicial District of Pennsylvania by [Maternal Grandmother]. Both the custody complaint and the guardianship petition involved the same minor child, [Child], age 3, born [in August of 2010], the grandson of both [Paternal Grandmother and Maternal Grandmother]. By order dated July 22, 2013, the pending custody complaint and guardianship proceedings were consolidated[,] and the Cameron County Prothonotary was directed to transfer the petition for the appointment of the guardian of the person to the Elk County Branch of the Fifty-Ninth Judicial District of Pennsylvania, where that action was consolidated with the above-captioned case.

Preliminary objections to the custody complaint were then filed on August 13, 2013, on behalf of [Maternal Grandmother] and an amended petition for the appointment of a guardian of the person of a minor child and appointment as emergency guardian were filed that same date on [Maternal Grandmother's] behalf as well. By order dated August 21, 2013, the [c]ourt ordered that the amended petition for the appointment of a guardian of the person would be considered for disposition in conjunction with the custody complaint and by order dated August 19, 2013, a hearing on the preliminary objections was scheduled for October 3, 2013. In the interim, a custody conciliation conference was conducted by Conference Officer Joshua Dean, Esq., on August 22, 2013. When the parties were unable to resolve the custody issues at the conciliation conference, by order dated August 23, 2013, a custody settlement conference was scheduled before a senior judge on November 6, 2013. On September 9, 2013, [Maternal Grandmother] filed a motion for reconsideration of the August 19, 2013 and August 21, 2013 orders of court, with that motion having been denied by order dated September 18, 2013. When all of the evidence necessary for consideration of the preliminary objections and amended petition for emergency guardian which had been filed on August 13, 2013, on behalf of [Maternal Grandmother], could not be presented on October 3, 2013, that hearing was continued and reconvened on October 21, 2013. At

the time of the continued hearing scheduled for that date, the preliminary objections of [Maternal Grandmother] as to jurisdiction and venue were withdrawn. The [Maternal Grandmother's] amended petition for emergency guardian was also withdrawn, subject to interim physical custody provisions being provided to permit [Maternal Grandmother] the opportunity to exercise physical custody of the subject minor child at defined times. The October 21, 2013 order which granted the oral motion of [Maternal Grandmother's] counsel to withdraw the emergency guardianship petition and established periods of physical custody to be exercised by [Maternal Grandmother] also included the provision that legal custody of the subject child would be shared by the parties.

Since the parties were not able to settle the custody issues at the time of the custody settlement conference on November 6, 2013, an order was subsequently entered on November 20, 2013, scheduling the custody hearing for February 11, 2014. When the three hours allotted for the custody hearing proved insufficient for the introduction of all of the evidence, the hearing was continued until April 1, 2014, with the presentation of all evidence being concluded during that proceeding.

The parties complied with pretrial directives which included undergoing psychological and bonding evaluations, submitting pretrial memorandums and parenting plans[,] and providing Pennsylvania State Police criminal history records and Protection From Abuse Database reports. At the time of the custody hearings, the [c]ourt received the testimony of John A. Goga, the chief executive officer of the Dickinson Center, Inc., psychologist Daniel Kysor, [Paternal Grandmother], and [Paternal Grandmother's] daughter, [T.L.S.] The testimony presented on behalf of [Maternal Grandmother] included the testimony of [Maternal Grandmother], as well as [C.P.W.], a neighbor of [Maternal Grandmother], [Maternal Grandmother's] daughter, [N.S.], and [Maternal Grandmother's] former boyfriend, [D.F.]. Documentary evidence in the nature of the custody evaluations and summary of Daniel Kyzor were admitted as well as documents relating to [Child's] mother, [Mother], who passed away [in June of 2013]. Photographs were also admitted.

Trial Court Opinion, 5/15/14, at 1-3.

On May 15, 2014, the trial court entered a custody order awarding the parties equally shared legal custody, Paternal Grandmother primary physical custody, and Maternal Grandmother partial physical custody. On June 13, 2014, Maternal Grandmother filed a notice of appeal and concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On June 27, 2014, the trial court filed its Rule 1925(a) Opinion, addressing the issues raised in Maternal Grandmother's concise statement by incorporating its May 15, 2014 opinion.

> In her brief on appeal, Maternal Grandmother raises three issues:
>
> 1. Did the lower court abuse its discretion and err as a matter of law in failing to consider all relevant facts of this case under the grounds of the Pennsylvania Custody Act, 23 Pa.C.S.A. sections 5321-5340, including the 16 statutorily defined factors set forth at 23 Pa.C.S.A. [§]5328(a)?
>
> 2. Did the lower court properly consider the best interests of the child as it affects the physical, intellectual, moral and spiritual well-being of the child[?]
>
> 3. Did the lower court abuse its discretion and err as a matter of law in considering evidence not part of the record[?]

Maternal Grandmother's Brief, at 4.

Maternal Grandmother argues that the trial court should have weighed heavily in her favor that, after Mother's death, she willingly allowed Paternal Grandmother to have contact with Child. Further, Maternal Grandmother asserts that the trial court should have weighed heavily against Paternal

Grandmother that Paternal Grandmother took Child to her home with the intention of not returning him to Maternal Grandmother's home, and that Paternal Grandmother did not consider the effect on Child from removing Child from the home with which he was familiar. Maternal Grandmother contends that the trial court ignored the weight of the evidence, as the evidence supported a finding that Paternal Grandmother did not have much contact with Child and did not perform essential duties for Child, except to the extent necessary when Child was in her physical custody a few times.

Maternal Grandmother urges that the trial court should have considered her current station in life when determining her ability to provide stability and continuity for Child, as opposed to her history of instability. Moreover, Maternal Grandmother contends that the trial court should have considered Paternal Grandmother's past attempts at alienating Child from Mother and her family, as well as Paternal Grandmother's present actions, observed by the psychologist, Mr. Kysor, regarding hovering and being secretive with Child in Maternal Grandmother's presence. Maternal Grandmother also argues that the trial court should have considered Mr. Kysor's conclusion that she had a bond with Child better than that of Paternal Grandmother with Child, and that Maternal Grandmother was a more nurturing grandparent.

Maternal Grandmother argues that the trial court should have honored Mother's wishes regarding Child, as set forth in Mother's Will and Power of Attorney appointing Maternal Grandmother Child's guardian in the event of Mother's death. She contends that Paternal Grandmother has not shown convincing reasons why the guardianship should not be enforced. Thus, Maternal Grandmother urges that she should be awarded primary physical custody of Child. Maternal Grandmother requests this Court to find it in Child's best interests to award her primary physical custody of Child, as she had a close, ongoing relationship with him, and it was the wish of his last living parent. Maternal Grandmother's Brief at 30.

Finally, Maternal Grandmother contends that the trial court abused its discretion and erred as a matter of law in considering evidence that was not part of the record when it considered that the reason for Child's fear of the dark was due to watching the television program, "The Walking Dead." Maternal Grandmother's Brief at 29.

Initially, we observe that, as the custody trial in this matter was held in February and April of 2014, the Act, 23 Pa.C.S. §§ 5321 to 5340, is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**C.R.F.**, 45 A.3d at 443 (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

**Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is

abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation marks and citations omitted). Furthermore, regarding the definition of an abuse of discretion, this Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) of the Act sets forth the best interest factors that the trial court must consider. *E.D. v. M.P.*, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323.

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

In ***A.V. v. S.T.***, 87 A.3d 818 (Pa. Super. 2014), this Court explained

the following:

> "***All*** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. ***E.D.***, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. ***Id.***
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 835 (Pa. Super. 2013).
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-23 (emphasis in original).

With regard to Maternal Grandmother's first two issues, she simply challenges the trial court's credibility determinations and the weight it placed on certain evidence. We conclude that Maternal Grandmother's first two issues lack merit. The trial court considered the statutory best interest factors under section 5328(a) and determined the credibility of the witnesses' testimony and the amount of weight to afford the testimony and evidence. The trial court also properly considered the best interests of Child, including his physical, intellectual, and moral well-being. After review, we discern no abuse of discretion.

Next, Maternal Grandmother argues that Mother's testamentary appointment of Maternal Grandmother as Child's guardian upon her death should have been afforded controlling weight. We do not agree. In *In re Slaughter*, 738 A.2d 1013 (Pa. Super. 1999), this Court instructed that, pursuant to 20 Pa.C.S. § 2519, where the sole surviving parent has made a testamentary guardianship appointment, the appointment may be defeated upon a showing of convincing reasons as to why is should not stand. *Id.* at 1017. The panel in *In re Slaughter* stated that the challenging party bears the burden of production and persuasion, and explained that the burden is a heavy one. *Id.,* at 1017-1018.

Maternal Grandmother argues that Paternal Grandmother has not overcome the heavy burden of production and persuasion outlined in *In re*

*Slaughter* and has failed to show convincing reasons why the guardianship should not stand. Maternal Grandmother's Brief, at 28.

In relation to the "any other relevant factor" language from 23 Pa.C.S. § 5328(a)(16), the trial court stated as follows:

> While relevant to the extent that his custody summary was presented as a portion of Joint Exhibit 1 and he testified to his recommendation, the findings and conclusions of Daniel Kysor have been considered and attributed the appropriate weight. Those findings and the suggestion of custody do not supercede [sic] the ultimate fact[-]finding role of the [c]ourt, which found the evidence presented in general on behalf of [P]aternal [G]randmother to be more competent and her testimony in particular to be more compelling than that of [M]aternal [G]randmother. While [P]aternal [G]randmother was cogent and plausible while testifying, [M]aternal [G]randmother was indirect, labile and vague. When asked about why she changed residences as often as she did, her response was "Things happen." Similar responses were provided to inquiries about her personal relationships. She also disavowed knowledge of her sons' criminal histories, only to acknowledge that they had both spent time in jail for statutory sexual assaults.

> The evidence regarding [Mother's] designation in her Will of her mother as the guardian of [Child] together with her appointing [Maternal Grandmother] as her attorney-in-fact or agent has been considered and attributed the appropriate weight, which was eroded somewhat by the fragility of [Mother's] mental health and the circumstances under which the documents were prepared. [Mother] had been hospitalized as an in-patient in two psychiatric units in the spring of 2013. She was discharged from the Clarion Hospital Psychiatric Unit on May 10, 2013, with recommended behavioral aftercare with Dr. Coffman and substance abuse treatment at Alcohol and Drug Abuse Services. In addition, while [Mother] purportedly asked her mother to make arrangements to have a will and power of attorney prepared, it was [Maternal Grandmother] herself who contacted the attorney, made the appointment for [Mother] and paid the attorney's fee on behalf of [Mother]. Moreover, given

the situation, it was not surprising that [Mother] designated her mother as her agent and guardian of [Child]. However, [Mother's] appointment of [M]aternal [G]randmother does not in any way supercede [sic] the function of [the trial court] in determining the current best interest of [Child].

Despite a purported close relationship with [Child], D.L., who has lived with and is now married to [Maternal Grandmother], did not testify.

Trial Court Opinion, 5/14,14, at 12-13.

We conclude that the trial court did consider Mother's testamentary appointment of Maternal Grandmother as Child's guardian, and it considered the circumstances surrounding the appointment. There was sufficient evidence surrounding the appointment upon which the trial court properly could have concluded that Maternal Grandmother's involvement and Mother's fragile state, caused by the death of Child's father and Mother's drug addiction affected the amount of weight to place on that appointment. Further, although the trial court noted the failure of Maternal Grandmother's husband, D.L., to testify as a witness at the custody trial, it does not appear that the trial court penalized Maternal Grandmother for D.L.'s failure to testify. In fact, the trial court sustained an objection at trial when Paternal Grandmother's counsel attempted to question Maternal Grandmother regarding the failure of D.L., to testify on the basis that it was a matter of trial strategy. N.T., 4/1/14, at 95-96. We will not disturb the trial court's conclusion that Paternal Grandmother sustained her burden in challenging

the appointment. *In re Slaughter*, 738 A.2d at 1017-1018. Again, we discern no abuse of discretion.

Finally, we address Maternal Grandmother's contention that the trial court improperly concluded that Child has a fear of the dark that comes from watching "the Walking Dead" on television while at Maternal Grandmother's home. Maternal Grandmother avers that there was no testimony at the custody trial that Child mentioned "The Walking Dead" or zombies. Maternal Grandmother's Brief, at 22.

In addressing 23 Pa.C.S. § 5328(a)(9) in its opinion entered on May 15, 2014, the trial court stated the following:

> The evidence established that both grandmothers try to maintain a loving, stable, consistent and nurturing relationship[] with [Child] which is adequate for his emotional needs, although there is some concern with [Child] being exposed to disturbing or unsettling depictions or programs when he is staying with [M]aternal [G]randmother. He has watched such programs as "The Walking Dead" while at [Maternal Grandmother's] residence and has manifest[ed] a fear of the dark, requiring that at times he sleep in a room with an adult. His ability to watch such programming calls into question the discretion of the adults in [Maternal Grandmother's] household and their lack of sensitivity to the impact upon [Child] in viewing disturbing, graphic images of zombies attacking and killing people.
>
> As set forth herein, while both parties attempt to provide [Child] with stability and consistency, based on the personal histories of the parties, [P]aternal [G]randmother is much more capable of sustaining a dependable, reliable and predictable environment conducive to [Child's] emotional needs. This factor is weighted substantially in favor of [P]aternal [G]randmother.

Trial Court Opinion, 5/14/14, at 11, ¶ 9.

-15-

Paternal Grandmother testified that Child is petrified of the dark and that he is afraid that someone is going to knock on his window. N.T., 2/11/14, at 52. She further testified that she observed Child place his toy pistol in his mouth and pull the trigger, then fall to the ground as if dead, which she considered unusual behavior. *Id.* Paternal Grandmother also stated that she hears Child use bad words, such as the "f" word, and "bit--," which she considered inappropriate. *Id.*

Maternal Grandmother testified that Child is afraid of going to his bedroom in her home at night and will not sleep by himself. N.T., 4/1/14, at 59. She also testified on cross-examination that Child likes to watch television with D.L., and that they watch "The Walking Dead," which has violence and depicts zombies. *Id.* at 93-95. Maternal Grandmother conceded that the violence depicted in the program might scare a young child, but she did not believe it is inappropriate for Child to watch the program, maintaining that Child was fearful even before he watched "The Walking Dead." *Id.* at 95. She admitted that Child must sleep with an adult at all times. *Id.* at 97-98.

In light of this testimony that was accurately described by the trial court, we conclude that there was sufficient, competent evidence in the record from which the trial court could have properly concluded that Child's viewing of an adult program such as "The Walking Dead" had an emotional

impact on him. We reject Maternal Grandmother's claim that there was no evidence to support the trial court's determination under section 5328(a)(9)

After a careful review of the record in this matter, we conclude that the trial court's determinations are supported by competent evidence. We, therefore, affirm the trial court's May 15, 2014 order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2015